UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAVELERS INDEMNITY OF CONNECTICUT, a Connecticut corporation, and TRAVELERS PROPERTY CASUALTY COMPANY of AMERICA, a Connecticut corporation,<br><br>              Plaintiffs,<br><br>  v.<br><br>ARCH SPECIALTY INSURANCE COMPANY, a Nebraska corporation,<br><br>              Defendant.<br>ARCH SPECIALTY INSURANCE COMPANY,<br><br>              Counter-Claimant,<br><br>  v.<br><br>TRAVELERS INDEMNITY OF CONNECTICUT, a Connecticut corporation, and TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, a Connecticut corporation,<br><br>              Counter-Defendants. | Case No. 2:11-CV-01601 JAM-CKD<br><br>ORDER GRANTING TRAVELERS' MOTION TO DISMISS AND MOTION TO STRIKE |

    This matter is before the Court on Plaintiffs/Counter

Defendants' Travelers Indemnity of Connecticut and Travelers Property Casualty Company of America (collectively "Travelers") Motion to Dismiss (Doc. #19) the third claim for relief in Defendant/Counterclaimant Arch Specialty Insurance Company's ("Arch") First Amended Counterclaim ("FAC") (Doc. #15), for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Also before the Court is Travelers' Motion to Strike Claims for Attorney's Fees and Punitive Damages (Doc. #20) from the FAC, pursuant to Federal Rule of Civil Procedure 12(f). Arch opposes both motions (Doc. #21). For the reasons set forth below, the motion to dismiss and motion to strike are GRANTED.[1]

I. FACTUAL ALLEGATIONS AND SUMMARY OF ARGUMENTS

The FAC was filed in response to the Complaint (Doc. #1) filed by Travelers, which brought one claim for declaratory relief against Arch. Travelers issued a primary policy (the "primary policy") and umbrella policy (the "umbrella policy") to United Salad Co., and its affiliate Freeway Transport, Inc. ("Freeway Transport"). Both policies were in effect from September 1, 2004 to September 1, 2005. Compl., ¶ 4. Arch insured United Salad Co. and Freeway Transport under an excess liability policy (the "excess policy"), also in effect from the September 1, 2004 to September 1, 2005. Compl., ¶ 5. In 2006, Freeway Transport was sued in Sacramento Superior Court in a case entitled <u>Malaquias Mejia as guardian ad litem for Diana Yuleidy Loza-Jimenez v. Loza Trucking,</u>

---

[1] This matter was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). Oral argument was scheduled for November 16, 2011.

et al. (the "Mejia Action").  The Mejia Action sought damages for catastrophic personal injuries suffered by the plaintiff as a result of an accident that occurred in November 2004.  Following a trial, Freeway Transport reached an agreement to settle the Mejia Action for $22.5 million.  Travelers contributed the combined $2 million limits of the primary and umbrella policies.  Arch funded the $20.5 million balance of the settlement.  Travelers asserts that it is not obligated to reimburse Arch for the $20.5 million, and seeks a declaratory judgment to that affect.

The FAC alleges that Travelers received an offer under California Code of Civil Procedure § 998 (the "§ 998 offer") to settle the Mejia Action for $2 million, but let the offer expire without informing Freeway Transport or Arch.  FAC, ¶¶ 17-24.  Instead, the Mejia action proceeded to trial, and Freeway Transport's liability was established.  Shortly before the trial entered the damages phase, Arch negotiated a "High-Low" agreement, which set a damages floor of $9 million and a ceiling of $22.5 million.  The jury awarded damages of $24,307,273.56 against Freeway Transport, which was reduced to $22.5 million pursuant to the settlement.

The FAC brings four claims against Travelers: (1) breach of contract and the implied covenant of good faith and fair dealing; (2) tortuous breach of the implied covenant of good faith and fair dealing; (3) breach of the duty of care; and (4) declaratory relief.  Arch argues that Travelers acted in bad faith and with negligence when it failed to inform Freeway Transport and Arch of the initial § 998 offer.  Accordingly, Arch seeks reimbursement of the $20.5 million that it ultimately paid to settle the Mejia

3

Action.

Travelers' motion to dismiss argues that under California and Oregon law it did not owe a direct duty of care to Arch, thus the third claim for relief should be dismissed for failure to state a claim. Additionally, the motion to strike argues that at most Arch could recover the amount it paid, but that its additional claims for attorneys' fees and punitive damages should be stricken. Arch contends that the Court should follow Oregon law, and that under Oregon law the third claim for relief should not be dismissed and the claims for attorneys' fees and punitive damages should not be stricken.

## II.   OPINION

### A. Legal Standard

#### 1. Motion to Dismiss

A party may move to dismiss an action for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). In considering a motion to dismiss, the court must accept the allegations in the complaint or counterclaim as true and draw all reasonable inferences in favor of the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972). Assertions that are mere "legal conclusions," however, are not entitled to the assumption of truth. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009), citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a plaintiff or counterclaimant needs to plead "enough facts to state a claim to

relief that is plausible on its face." Twombly, 550 U.S. at 570. Dismissal is appropriate where the plaintiff or counterclaimant fails to state a claim supportable by a cognizable legal theory. Balistreri v. Pacifica Police Department, 901 F.2d 696, 699 (9th Cir. 1990).

Upon granting a motion to dismiss for failure to state a claim, the court has discretion to allow leave to amend the complaint or counterclaim pursuant to Federal Rule of Civil Procedure 15(a). "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment." Eminence Capital, L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).

### 2. Motion to Strike

Federal Rule of Civil Procedure 12(f) governs motions to strike:

> Rule 12(f) provides in pertinent part that the Court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. . . . Motions to strike are disfavored and infrequently granted. A motion to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation.

Bassett v. Ruggles et al., 2009 WL 2982895 at *24(E.D. Cal. Sept. 14, 2009) (internal citations omitted).

### B. Claims

#### 1. Third Claim for Relief: Breach of Duty of Care

The third claim for relief in the FAC alleges that Travelers owed Arch a duty of due care in its claims handling and settlement negotiations in the Mejia Action on behalf of Freeway Transport, which was insured by both Travelers and Arch. The FAC further

alleges that Travelers owed a duty of care to Arch in conducting investigations and exercising due diligence.  Arch argues that Travelers breached that duty of care and failed to exercise the due care of an ordinary insurer by failing to communicate to Freeway Transport and Arch the initial § 998 offer (which was a reasonable offer in light of the circumstances), failing to settle the Mejia Action within the limits of the primary and umbrella policies despite the opportunity to do so, failing to properly investigate and handle the claim, and failing to give equal weight to Freeway Transport and Arch's interests as it gave to its own interests. Because of this breach of the duty of care, Arch was damaged by having to pay $20.5 million to settle the Mejia Action, and Arch asserts that the breach was so reckless and despicable as to warrant punitive and exemplary damages against Travelers.

     Both parties agree that under California law, Arch does not have a direct cause of action in its own right against Travelers for breach of the duty of care.[2]  Due to an absence of contractual privity, an excess insurer has no direct claim in its own right against a primary insurer for the primary insurer's allegedly unreasonably failure to settle a claim within its policy limits. Commercial Union Assurance Companies v. Safeway Stores, Inc., 26 Cal.3d 912, 917-918 (1980).  The excess insurer's rights, if any, arise solely through equitable subrogation of the rights of the insured. Id.

     However, the FAC contains allegations that the primary,

---

[2] Arch makes this concession only for purposes of resolving the present motions, and contends that California law on the issue is not settled and there is a dearth of case law on the subject.

6

1  umbrella and excess policies were purchased through an insurance
2  broker located in Oregon, that the policies were negotiated and
3  entered into in Oregon, and that all premiums were paid in Oregon.
4  FAC, ¶¶ 7-9.  Additionally, it is alleged that the plaintiff in the
5  Mejia Action is, and was at the time of her injuries, a resident of
6  Oregon, as was the driver of the truck that caused the injuries.
7  Id. at 13.  Freeway Transport and United Salad Co. are both based
8  in Oregon.  The load being carried by the truck that caused the
9  injuries was en route to Oregon.  Id.
10     The motion to dismiss the third claim for relief argues that
11  the allegations of Oregon contacts were added to the FAC in order
12  to bolster the argument that the Court should follow Oregon law,
13  not California law.  Travelers argues that the Court need not
14  engage in a choice of law analysis because Oregon law, like
15  California law, does not recognize a direct duty of care between a
16  primary insurer and an excess insurer, beyond equitable subrogation
17  of the rights of the insured. However, even if the Court finds that
18  Oregon law does differ from California law on this issue, Travelers
19  asserts that under a choice of law analysis the Court should follow
20  California law rather than Oregon law.
21     Arch's brief in opposition to the motion to dismiss contends
22  that Oregon does recognize a direct duty of care, and that the
23  Court should follow Oregon law and not dismiss the third claim for
24  relief.  However, as noted by Travelers in its Reply brief, Arch
25  does not cite any Oregon insurance case law supporting its
26  contention that a direct duty, as opposed to a duty arising from
27  equitable subrogation, exists between an excess and primary
28  insurer.

7

Both parties cite Maine Bonding & Cas. Co. v. Centennial Ins. Co., 298 Or. 514 (1985), for opposing propositions. Travelers contends that Maine Bonding establishes that a primary insurer owes a duty of care to an excess insurer that arises from equitable subrogation. Arch asserts that Maine Bonding holds that a primary insurer owes a direct duty of care to an excess insurer, not a duty arising out of equitable subrogation.

In Maine Bonding, an excess liability insurer sought to recover against a primary insurer for alleged failure to act in good faith and with due diligence in the handling of a claim. The Oregon Supreme Court decision affirmed the decision of the Court of Appeals, that there was sufficient evidence for a jury to find that had the primary insurer initiated settlement discussions it would have learned that the case could have been settled for much less than it was ultimately settled for, and that failure to make such an investigation was negligence entitling the excess liability insurer to recovery.

The court began its discussion by noting that the resolution of the case turned on what duty, if any, is owed by the primary liability insurer to the excess liability insurer. Maine Bonding, 298 Or. at 516. In discussing the liability of the primary insurer to the excess insurer, the court determined that

> [B]ecause of the close relationship between the insured, the primary insurer, and the excess insurer, and because of the exposure to liability of the excess insurer arising from the primary insurer's want of due care, it is appropriate that the excess carrier be equitably subrogated to essentially the same rights against the primary insurer as the insured would have if there were no excess coverage. In this context, the term "equitable subrogation" describes subrogation by operation of law, as opposed to conventional subrogation arising under an express or implied agreement.

Maine Bonding, at 520.

The court in Maine Bonding discussed at length the doctrine of equitable subrogation, and then stated that,

> [I]n the absence of excess insurance the insured becomes his own excess insurer. With purchase of excess insurance, the excess insurer steps into the shoes of the insured as to the potential liability covered by the excess policy. The rational was stated by the Supreme Court of Minnesota in Continental Casualty Company v. Reserve Insurance Company, 307 Minn. 5, 8-9 (1976): We hold that an excess insurer is subrogated to the insured's rights against a primary insurer for breach of the primary insurer's good-faith duty to settle. . . . If the insured purchases excess coverage, he in effect substitutes an excess insurer for himself. It follows that the excess insurer should assume the rights as well as the obligations of the insured in that position.

Maine Bonding, 298 Or. at 522.

The Maine Bonding court then noted in a footnote that courts of other states have allowed excess insurers to recover from primary insurers on theories other than equitable subrogation, such as contractual subrogation or direct duty. "Some courts have held that the excess carrier's right of recovery is supportable on the theory that the relationship between the primary insurer and the excess insurer gives rise to an independent duty." Maine Bonding, 298 Or. at n.5, citing Hartford Acc. & Indem. Co. v. Michigan Mut. Ins. Co., 61 N.Y.2d 569 (1984); Russo by Russo v. Rochford, 123 Misc.2d 55 (1984). The Maine Bonding court ultimately held that:

> Within the context of the instant case, the rule is this: A primary insurer owes an excess insurer essentially the same duty of due diligence in claims handling and settlement negotiation it owes to an insured- due care under all the circumstances. In considering the manner in which it will defend a claim, the primary insurer may consider its own interest, but it must also consider the interests of other parties whose interests are involved, notably, the insured and the excess insurer. Such a rule in no way increases the duty or liability of the primary insurer. Relieving the primary insurer of its duty to diligently defend in those cases in which excess

> coverage and excess exposure exist may give the primary insurer a disincentive to settle.

Maine Bonding, at 523.

Arch asks this Court to look only at the case holding, and interpret it in a manner that would establish a direct duty of care between the primary insurer and the excess insurer. However, this Court cannot look at the holding in a vacuum, ignoring the extensive discussion of equitable subrogation that precedes the holding. Instead, the Court views Maine Bonding as establishing that the duty of an primary insurer to an excess insurer is one which arises from equitable subrogation, not from a direct duty.

The Oregon Supreme Court in Georgetown Realty, Inc. v. The Home Insurance Company, 313 Or. 97, 109-110 (1992), also interpreted Maine Bonding as establishing that an excess insurer is equitably subrogated to the rights of the insured. In Georgetown Realty, an insured brought a claim against its insurer arising out of the insurer's failure to settle an action within policy limits, and the court cited the holding in Maine Bonding as a significant example of equitable subrogation. The court noted that "Maine Bonding is especially significant, because the basis of the primary insurer's duty of due care to the excess insurer was the former's duty of due care to the insured (the excess insurer is equitably subrogated to the rights of the insured against the primary insurer)." Georgetown Realty, 313 Or. at 109-110. In other words, the court noted, in Maine Bonding "the primary insurer's conduct would be actionable "negligence" toward the excess insurer if it were actionable negligence toward the insured." Id.

Likewise, Maine Bonding is cited by a number of treatises as an example of the equitable subrogation rule used by a majority of

10

states.  See e.g. Claim Adjuster's Automobile Liability Handbook, CAALH § 7:7, n. 16 (2011); Law and Prac. of Ins. Coverage Litig., LPINLIP § 29:28, n.2 (2011); Litig. & Prev. Ins. Bad Faith, §7:9, n.11 (3rd. Ed. 2011).

In arguing that Maine Bonding establishes a direct duty of care, Arch cites a number of cases that have cited to Maine Bonding.  However, none of the cases cited by Arch are cases involving insurance disputes. The case primarily relied on by Arch, Onita Pacific Corp. v. Trustees of Bronson, 315 Or. 149 (1992), was not an insurance case and only cited Maine Bonding as an example of situations in which the law recognizes a duty of care. Specifically, the Onita court, offering examples of professional or contractual relationships that may give rise to a tort duty to exercise reasonable care on behalf of another's interests, stated, " A primary insurer has a duty to excess insurers and to the insured to exercise reasonable care in attempting to settle third-party claims within policy limits." Onita, 315 Or. at 161, citing Maine Bonding.  However, Onita did not elaborate on whether the duty of care recognized by Maine Bonding was a direct duty or a duty arising from equitable subrogation.

The remaining cases cited by Arch merely cite Onita and the list of examples of situations (including the primary insurer-excess insurer relationship found in Maine Bonding) in which there is a duty of care.  None of the cases analyze Maine Bonding and whether this duty of care is a direct duty or one that arises from equitable subrogation.  In light of the lack of support for Arch's theory that Maine Bonding established a direct duty as opposed to one arising from equitable subrogation, this Court finds Travelers'

11

1  arguments to be more persuasive.
2       In federal diversity actions such as the present suit, a
3  federal court must apply the choice of law rules of the forum
4  state.  Isuzu Motors Ltd. V. Consumers Union of U.S. Inc, 12
5  F.Supp.2d 1035, 1043 (C.D.Cal. 1998).  California resolves conflict
6  of law questions through a "governmental interest" analysis.  Id.
7  Courts applying California's governmental interests test have
8  established a three part test: first the court must consider
9  whether the two states' law actually differ; if so, the court must
10 examine each state's interest in apply its law to determine there
11 is a true interest, and if each state has a legitimate interest the
12 court must compare the impairment to each jurisdiction under the
13 other's rule of law.  Id., citing Arno v. Club Med. Inc., 22 F.2d
14 1464, 1467 (9th Cir. 1994).  There is no conflict if the same
15 outcome would be reached under the laws of each of the states
16 involved.  Isuzu Motors, 12 F.Supp.2d at 1043.
17      Because the Court finds that there is no conflict between
18 California and Oregon law on the duty of care owed by a primary
19 insurer to an excess insurer, the Court need not engage in further
20 analysis to decide choice of law.  See e.g. Isuzu Motors, supra;
21 Gianaculas v. Trans World Airlines, Inc., 761 F.2d 1391, 1393 (9th
22 Cir. 1985).  Accordingly, because it finds that under both
23 California and Oregon law, Travelers' to duty to Arch is a duty
24 that arises from equitable subrogation and not from a direct duty,
25 the motion to dismiss the third cause of action from the
26 counterclaim is granted.  The third cause of action is dismissed,
27 with prejudice.
28

2. Punitive Damages

The motion to strike the punitive damages request from the FAC argues that Arch is not entitled to seek punitive damages, because as an alleged equitable subrogee, Arch's recoverable damages are limited to the sum it paid on behalf of Freeway Transport to settle the underlying suit.  This restriction on damages is the law in both California and Oregon.  See e.g. Continental Casualty Co. v. Royal Ins. Co., 219 Cal.App.3d 111, 120 (1990); State v. Divers, 51 Or.App. 351, 355 (1981).  Arch concedes that the punitive damages request in the FAC is based on the third claim for relief only, and that punitive damages are unavailable for its other claims in the FAC, all of which are based on equitable subrogation.  However, Arch argues that because the third claim is not based on equitable subrogation, the prayer for punitive damages from this claim should not be stricken.

Because this Court finds that the third claim for relief should be dismissed as Oregon does not recognize a direct duty claim from an excess insurer against a primary insurer, the request for punitive damages premised on this claim should also be stricken.  Accordingly, the motion to strike the requests for, and references to, punitive damages is GRANTED.

3.   Attorneys' Fees

Lastly, the motion to strike argues that Arch cannot recover attorneys' fees under California or Oregon law, thus the request for attorneys' fees in the FAC should be stricken. Travelers asserts that because the FAC contains no allegations that Freeway Transport incurred attorneys fees, Arch as the subrogee is likewise not entitled to fees.  Additionally, Travelers argues that the fee

statue relied on by Arch is a procedural statute not applicable in this federal diversity action.

Arch seeks recovery of both the fees incurred in the course of settling the Mejia Action, and the fees incurred in the present suit. The prayer for attorneys' fees is premised on allegations in the first and second claims for relief in the FAC, which allege Travelers' acted in bad faith in its handling of the Mejia Action. Arch concedes that it cannot recover attorneys' fees under California law, but argues that it can recover fees under Oregon law. Arch relies on O.R.S. § 742.061, which allows the recovery of attorneys' fees as costs when, in an action on an insurance policy, a settlement is not made within six months of the proof of loss and the plaintiff's recovery exceeds the amount of the defendants tender.

A federal court sitting in diversity applies the law of the forum state regarding an award or attorneys fees. Kona Enterprises, Inc. v. Estate of Bishop, 229 F.3d 877, 883 (2000). Further, O.R.S. § 742.061 is a procedural rule, not a substantive one (see Vancouver Furniture Co., Inc. v. Industrial Indem. Co. of Northwest, 74 Or.App. 642, 648 (1985), (discussing O.R.S. § 742.061, formerly numbered O.R.S. § 743.114)), and "attorney's fees may be awarded by a district court when they are part of the state's substantive, rather than procedural, requirements." In re Larry's Apartment, L.L.C., 249 F.3d 832, 838 (9th Cir. 2001).

Accordingly, as both parties agree that the recovery of attorneys' fees in this action is barred under California law, and this Court must apply California law in determining whether fees are permissible, the Court will grant the motion to strike the

request for attorneys' fees in the FAC.

### III. ORDER

For the reasons set forth above, the Motion to Dismiss is GRANTED. The third claim for relief in the FAC is DISMISSED, with prejudice. The Motion to Strike is GRANTED. The specific portions of the FAC to be stricken are: ¶ 45(b) and (c), ¶49, and the portions of lines 2, 3, 6, 7 and 15 of page 13 that refer to punitive damages and/or attorneys' fees.

IT IS SO ORDERED.

Dated:  December 15, 2011

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE