UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

TRAVELERS INDEMNITY OF
CONNECTICUT, et al,                )
                                   )    No. 2:11-CV-1601-JLQ
                                   )
            Plaintiffs,            )
                                   )    ORDER GRANTING MOTION FOR
                                   )    LEAVE TO FILE SECOND
    v.                             )    AMENDED COUNTERCLAIM
                                   )
                                   )
ARCH SPECIALTY INSURANCE           )
COMPANY,                           )
                                   )
            Defendant.             )
_____   )

        BEFORE THE COURT is Defendant Arch Specialty Insurance Company's
("Arch") Motion for Leave to File a Second Amended Counterclaim (ECF No.
64)(the "Motion").  The court has considered the Memo in Opposition (ECF No.
68) and Reply brief (ECF No. 69) and determined that oral argument is not
necessary. L.R. 230(g).

**I. Introduction**

        At issue, is whether Arch, the excess insurance carrier, should be allowed to
amend its counterclaim to expand its allegations of bad faith against Travelers, the
primary insurance carrier.  Arch asserted a bad faith claim against Travelers in its
First Amended Counterclaim, but the allegations focused entirely on Travelers
alleged failure to accept a 998 Offer of settlement for $2 million that was made in
2006.  At the time of the Scheduling Conference, Arch characterized its claims as:
1) failure to accept the 998 Offer; 2) failure to notify Arch or the insured, Freeway
Transport, of the 998 Offer; and 3) failure to conduct an adequate investigation
prior to determining whether to accept or reject the 998 Offer. (ECF No. 16, p. 3).
During the summary judgment briefing, Arch argued that Travelers also acted in

ORDER – 1

bad faith during the pendency of the underlying state court personal injury action (generally referred to by the parties as the "Mejia action"), by failing to make an offer of settlement until after liability was determined at a bench trial in 2009 and not making a counter-offer to a mediation statement in 2008 which sought $14 million.  Travelers objected in its summary judgment briefing to the expansion of Arch's bad faith theory.

At the hearing on the summary judgment motions on December 3, 2012, Arch orally requested to amend its pleadings, and the court allowed Arch until December 17, 2012 to file a written motion.  Now before the court is that written motion.

## II.  Discussion

Federal Rule of Civil Procedure 15(a) provides that an opposing party's written consent or leave of court is required for amendment of pleadings.  The Rule further states: "The court should freely give leave when justice so requires." Fed.R.Civ.P. 15(a)(2).  Whether to grant such leave rests in the discretion of the court. *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Although Fed.R.Civ.P. 8 requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," an "unadorned the-defendant-unlawfully-harmed-me accusation" will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A pleading that offers only labels and conclusions, or a formulaic recitation of the elements of a cause of action will not do. *Id.*  Generally, a court does not deny leave to amend unless there has been undue delay, bad faith, or dilatory motive on the part of the movant, or where the amendment would result in undue prejudice to the opposing party, or where amendment would be futile. *Zucco Partners, LLC v. Digimarc Corp,*, 552 F.3d 981, 1007 (9th Cir. 2009).

### A.  Arch's Argument in Support of Amendment

Arch first argues that its First Amended Counterclaim (ECF No. 15) adequately pleads its bad faith claim and "sweeps in all of Travelers' conduct, including conduct after Travelers rejected the $2 million settlement offer". (ECF

ORDER – 2

No. 64, p. 2).  The court rejects this argument.  Arch was unable to articulate or demonstrate at the December 3, 2012 hearing where in the First Amended Counterclaim allegations were made concerning conduct other than the $2 million 998 Offer.   Now, in its written Motion, Arch relies on the weak arguments that it used the word "included" or that the conclusory assertion that Travelers "acted in bad faith with respect to the Underlying Action" was sufficient. (ECF No. 64, p. 10).  The First Amended Counterclaim focused on the 998 Offer and the alleged failure to accept that offer and to inform Freeway Transport of the 998 Offer.  The First Amended Counterclaim did not encompass Traveler's actions after the 998 Offer expired.

Arch also argues that the course and conduct of this litigation has adequately put Travelers on notice that Arch's claims include conduct after the 998 Offer.  It is now clear from the summary judgment briefing, that Arch's allegations of bad faith expand beyond the 998 Offer.  Arch complains of Traveler's failure to offer a settlement amount at anytime prior to the bench trial finding of liability, including in response to Plaintiff's $14 million evaluation made in a mediation statement.  However, Travelers, in its opposition to summary judgment,  objected that Arch's summary judgment contentions were beyond the scope of the pleadings.

Arch argues that Travelers was clearly on notice during the discovery process that conduct post-2006 was at issue.  By way of example, Arch points to a statement made in a Joint Statement Re: Discovery Disagreement (ECF No. 32), where Arch states: "Arch further contends that after the § 998 Offer expired, Travelers continued its pattern of bad faith conduct by failing to initiate settlement discussions with the underlying plaintiff [], and by continuing to withhold critical information and case evaluations from the insured Freeway Transport."  Arch also argues that discovery has included conduct that occurred after the 998 Offer was made and rejected.

### B.  Traveler's Arguments in Opposition

Traveler's argues that Arch cannot demonstrate the "good cause" necessary for amendment.  Traveler's argues that the Scheduling Order (ECF No. 18) and Fed.R.Civ.P. 16 require a showing of "good cause."  Travelers contends that Arch has not identified any new facts justifying amendment.  Travelers further argues that Arch was not diligent in seeking leave to amend.  As Travelers clearly objected to the deficiency in the pleadings in its summary judgment opposition of September 19, 2012, Travelers argues that Arch demonstrated a lack of diligence by not seeking leave to amend until the summary judgment hearing on December 3, 2012.  Finally, Travelers argues that it will suffer prejudice if Arch is allowed to amend at this late date.  Travelers states that the newly asserted theory requires Arch to demonstrate that the Mejia action could have settled for some amount above $2 million, but less than $22.5 million, and that requires discovery concerning Arch's willingness to contribute to settlement.  Travelers contends that discovery would have to be reopened, expert discovery may need to be revisited, and a previously entered Protective Order would need to be vacated. (ECF No. 68, p. 14).

### C.  Analysis

In an Order of September 21, 2011, the court stated: "No further joinder of parties or amendments to pleadings is permitted except with leave of court, good cause having been shown." (ECF No. 18).  Thus, the deadline for amendment was effectively September 21, 2011, and Arch's argument that there was no deadline is not well-taken.  A modification of the Scheduling Order requires "good cause" and the court's consent. Fed.R.Civ.P. 16(b)(4).  Here, the Scheduling Order specifically required "good cause" for further amendment.   "Good cause" is the applicable standard.

The only "cause" set forth by Arch is apparently that it believed its First Amended Counterclaim was sufficient, and that Travelers was on notice that Arch's bad faith theory was more than what was actually pled.  Rather than focusing on the

reasons why amendment should be allowed at this late date, Arch argues that Travelers will not be prejudiced, that it is not acting in bad faith, and there is no undue delay.  The mere fact that an opposing party would not be prejudiced by an amendment, does not demonstrate good cause for an amendment.

However, the court is cognizant of the policy in favor or resolving litigation on the merits.  "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Foman v. Davis*, 371 U.S. 178, 181-82 (1962).  The court believes from a review of the file in this matter, that Travelers was aware that Arch's bad faith claims were about more than just the 998 Offer.  That does not excuse Arch's failure to adequately plead the claim, but the fact that Travelers was on notice of Arch's bad faith theories and that some discovery has been conducted concerning post-998 Offer conduct, establishes good cause for allowing amendment and determining the dispute on the merits.

**D.  Discovery and the Protective Order**

Travelers has argued that the Protective Order (ECF No. 35) entered by Magistrate Judge Delaney needs to be vacated.  The Protective Order precluded "any discovery as to Arch's internal conduct, including internal claims handling, monitoring, evaluation, assessment, and level of involvement regarding the Mejia Action prior to the determination of the underlying insured's liability on December 14, 2009." (ECF No. 35, p. 12).  Travelers previously sought reconsideration of this order from Judge Mendez, which was denied. (ECF No. 41).

Travelers argues that discovery of Arch's internal evaluations is now necessary because Arch must establish that it would have been willing to contribute to a settlement in August 2008, when the plaintiffs in the Mejia action made the assessment of $14 million in their mediation statement.  Travelers argues that as there is currently no such evidence, amendment would be futile.  Previously

ORDER – 5

Travelers argued that Arch's evaluation of the Mejia action, that was made contemporaneously as the action developed in state court, was relevant to assessing whether Travelers' actions were reasonable.  Arch argued that because Travelers was in control of the Mejia litigation and Arch was under no duty to contribute to settlement until the primary limits were offered, its internal evaluations were irrelevant.

Travelers argued that "a rational trier of fact could, at least potentially, put some weight upon the contemporaneous evaluations of Arch in deciding whether Travelers acted reasonably." (ECF No. 68-2, Tr. p. 8).  Travelers also emphasized, that at that stage in the litigation the issue was whether the information was discoverable, not admissibility.

Arch's prior arguments went towards admissibility.  Arch argued that its internal evaluations could be too persuasive and usurp the province of the jury. (Tr. 15).  Arch argued that it did not have access to all the same information in the Mejia action that Travelers did, and thus Arch's assessment or evaluation was not made on all the same facts.  That argument goes to weight and admissibility, not whether it is discoverable.  Arch argued its internal evaluations would confuse the jury–again going to admissibility. (Tr. 18).

The court concludes that Arch's internal evaluations are now relevant. Magistrate Delaney viewed the issue presented as a "close[] question" and noted that the e-mail from Tom Houlihan to other Arch employees, which was evidently inadvertently produced prior to the issuance of the Protective Order, "tends to suggest that Arch agreed with Travelers' assessment of the case at the time." (ECF No. 35, p. 7).  Travelers argued that there was no on-point authority and that the matter was one of first impression, while Arch pushed reliance on a district court opinion, *Lexington Ins. Co. v. Sentry Select Ins. Co.*, 2009 WL 4132140 (E.D. Cal. 2009), which is not controlling authority.

Travelers did not owe a direct duty to Arch.  The court has previously ruled

that Travelers' "duty to Arch is a duty that arises from equitable subrogation and not from a direct duty". (Order, ECF No. 25, p. 12).  Arch is proceeding in equity, a doctrine of fairness.  If for example during the course of the Mejia action, Arch's internal evaluation concurred with Travelers and approved of Traveler's litigation strategy, it would strike the court as quite unfair for Arch to preclude that evaluation from discovery and then argue to the jury that Traveler's handling of the litigation was unreasonable and in bad faith.  As further example of the potential relevance, California Model Civil Instruction 2334 on Bad Faith Refusal to Accept a Reasonable Settlement Within Policy Limits, includes as an element that the insurer "failed to accept a reasonable settlement demand."  Whether the demand was reasonable turns in part on the underlying plaintiff's injuries and the probable liability.  It also asks what the insurer "knew or should have known at the time" the demand was rejected.  Arch's contemporaneous evaluation of the Mejia action may be relevant to these issues.

This court's review of the file in this matter, including review of the transcript (ECF No. 68-2) of the hearing on the Motion for Protective Order, and now the granting of the Motion to include post § 998 claims, makes it clear that the Protective Order should be vacated and discovery on all matters permitted.

The burden of producing this initial discovery should be relatively minimal. Arch has represented that the information has been segregated from other documents and intentionally withheld, so there should be no burden associated with its production. (ECF No. 68-2, Tr. 25).  Accordingly,

**IT IS HEREBY ORDERED**:

1.    Arch's Motion for Leave to File Second Amended Counterclaim (ECF No. 64) is **GRANTED**.

2.  The previously entered Protective Order (ECF NO. 35) is hereby VACATED.

3.    A Telephonic Scheduling Conference for the setting of discovery,

1  motions, pretrial, and trial dates will be subsequently set by the court.

2     4.  The previously discussed and tentative hearing for January 31, 2013 is

3  stricken.

4     **IT IS SO ORDERED**.  The Clerk shall enter this Order and furnish copies to

5  counsel.

6     DATED this 28th day of January, 2013.

7                    s/ Justin L. Quackenbush
                 JUSTIN L. QUACKENBUSH
8           SENIOR UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER – 8